UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

MARIE HOAGLAN,
on behalf of herself and
all others similarly situated,

    Plaintiff,

    v.                                         Case No. 20-cv-425

GREDE HOLDINGS, LLC,

    Defendant

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF FLSA CLASS COLLECTIVE SETTLEMENT**

## INTRODUCTION

The Parties have filed a Joint Motion for Settlement Approval ("Joint Motion") of the settlement reached between Named Plaintiff, Marie Hoaglan, the putative collective, and Defendant, Grede Holdings, LLC ("Defendant"). The Settlement Agreement & Release ("Settlement Agreement") provides for a total monetary settlement of $64,307.31. The Settlement Agreement is fair and reasonable, as it fully and adequately satisfies this Court's criteria for settlements of *bona fide* wage disputes. As such, the parties respectfully request that the Court approve the settlement, certify the Named Plaintiff's proposed collective, and certify Named Plaintiff's counsel, Walcheske & Luzi, LLC, as counsel for the collective ("Collective Counsel"), and the Named Plaintiff, ("Plaintiff" or the "Named Plaintiff"), as representatives for the putative collective.

# STATEMENT OF FACTS

I. **PROCEDURAL HISTORY AND SETTLEMENT BACKGROUND**

On March 19, 2020, Plaintiff, Marie Hoaglan, filed her *Complaint* in the instant case as a collective and class action pursuant to the Fair Labor Standards Act of 1938, as amended, ("FLSA"), and Wisconsin's Wage Payment and Collection Laws, WIS. STAT. § 109.01 *et seq.*, WIS. STAT. § 104.01 et seq., WIS. STAT. § 103.001 et seq., WIS. ADMIN. CODE § DWD 274.01 *et seq.,* and WIS. ADMIN. CODE § DWD 272.001 *et seq*. ("WWPCL") and FED. R. CIV. P. 23.

Plaintiff, on behalf of herself and all other similarly situated current and former hourly-paid, non-exempt employees of Defendant, alleges that Defendant operated (and continues to operate) an unlawful compensation system that deprived and failed to compensate Plaintiff and all other current and former hourly-paid, non-exempt employees for all hours worked and work performed each workweek, including at an overtime rate of pay for each hour worked in excess of forty (40) hours in a workweek, by: (1) shaving time from Plaintiff's and all other hourly-paid, non-exempt employees' weekly timesheets and/or otherwise failing to compensate said employees for all pre-shift, post-shift, and/or in-shift hours worked and/or work performed, to the detriment of said employees and to the benefit of Defendant, in violation of the FLSA and WWPCL; and (2) failing to include all forms of non-discretionary compensation, such as monetary bonuses, incentives, shift differentials, awards, and/or other rewards and payments, in all current and former hourly-paid, non-exempt employees' regular rates of pay for overtime calculation purposes, in violation of the FLSA and WWPCL.

On May 15, 2020, Defendant joined issue by filing *Defendant's Answer and Statement of Defenses.* (ECF No. 8.) Thereafter, the parties engaged in extensive written discovery, which required Defendant to disclose payroll documentation, documents pertaining to Defendant's

policies, procedures, and compensation practices, as well as documentation relating to its timekeeping systems. Plaintiff also deposed two of Defendant's employees – her former supervisor and a human resources representative – regarding her claims.

On January 7, 2021, Plaintiff amended her *Complaint* in order to dismiss her Second and Fourth Claims for Relief, which alleged that Defendant failed to include all forms of non-discretionary compensation, such as monetary bonuses, incentives, shift differentials, awards, and/or other rewards and payments, in all current and former hourly-paid, non-exempt employees' regular rates of pay for overtime calculation purposes, in violation of the FLSA and WWPCL. (ECF No. 17.)

The filing of an Amended Complaint coincided with the Parties' stipulation for conditional certification. (ECF No. 14.) This Court approved the Parties' stipulation and authorized Collective Counsel to serve court authorized notice to putative collective members. (ECF No. 16.) After completion of the notice period, the Parties agreed to attempt to resolve this case through direct settlement negotiations between their respective counsel.

Over the course of several weeks, the Parties: engaged in concentrated settlement discussions through their attorneys, including ongoing substantive discussions on the merits of Plaintiff's claims and Defendant's defenses; conducted document and data review; and conducted damages calculations. All negotiations were held at arm's length.

On August 17, 2021, the Parties reached an agreement in principle to settle the case solely as a collective action, rather than a collective and class action, for a total monetary amount of $64,307.31, the terms and conditions of which were memorialized in the Settlement Agreement, filed as **Exhibit 1**. The terms of the Settlement Agreement, stated briefly, are as follows:

3

- For settlement purposes only, the Parties agree to stipulate to the final certification of an FLSA collective.

- To recover under the FLSA collective, a putative collective member must have timely and validly completed and returned the Court's approved Consent Form and had a compensable claim for past due overtime wages under the FLSA.

- Defendant shall establish a Gross Settlement Fund of $64,307.31;
    - From the Gross Settlement Fund, the twenty-one (21) members of the FLSA Collective will share in an amount not to exceed $16,807.33, which total is equal to one hundred percent (100%) of all past due wages owed and an additional sixty percent (60%) of past due wages owed as liquidated damages;
    - Named Plaintiff shall receive an amount not to exceed $6,000.00 as a service award for her contributions to the FLSA Collective; and
    - Collective Counsel shall receive an amount for attorneys' fees and costs not to exceed $41,500.00.

- Any settlement amounts allocated to FLSA Collective members that are not claimed (*e.g.* due to individuals failing to negotiate the settlement check within 120 days of issuance), shall revert to Defendant.

## **ARGUMENT**

I. **BECAUSE THE PUTATIVE FLSA COLLECTIVE SATISFIES THE STANDARDS REQUIRED BY THE COURTS, THE 29 U.S.C. § 216(B) COLLECTIVE ACTION SHOULD BE FINALLY CERTIFIED.**

It is generally accepted that court approval of the settlement of FLSA collective action settlements is necessary to effectuate a valid and enforceable release of the FLSA claims asserted by plaintiffs. *See Walton v. United Consumer Club, Inc.,* 786 F.2d 303, 306 (7th Cir. 1986) (citing

*Lynn's Food Stores, Inc.*, 679 F.2d at 1352). If the settlement reflects a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores, Inc.,* 679 F.2d at 1354.

By participating in this collective action through the returning of a Consent Form, FLSA Collective members took advantage of the efficiencies and economics of the collective action device, which enables workers with low-dollar individual claims to pursue their FLSA rights by pooling resources with similarly-situated workers. *See Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 339 (1980) ("[w]here it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device").

An action under the FLSA may be maintained against "any employer . . . by any one or more employees for and in [sic] behalf of himself or themselves and other employees similarly situated." 29. U.S.C. § 216(b). The FLSA does not contain a definition of "similarly situated." To determine if the putative class members are similarly situated to each other, courts look to:

> (1) whether the factual and employment settings of the individual plaintiffs are similar or disparate;
>
> (2) whether Defendant may assert various defenses that appear to be individual to each plaintiff; and
>
> (3) whether fairness and procedural considerations support proceeding as a collective action.

*Espenscheid v. DirectSat USA, LLC*, No. 09-cv-625-bbc, 2011 WL 2009967, *4 (W.D. Wis. May 23, 2011) quoting *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001); *Russell v. Ill. Bell Tel. Co.*, 721 F. Supp. 2d 804, 811 (N.D. Ill. 2010).

With respect to the FLSA collective, the Amended Complaint alleges the same violation of law – Defendant shaved time from Plaintiff's and all other hourly-paid, non-exempt employees'

5

weekly timesheets and/or otherwise failed to compensate said employees for all pre-shift, post-shift, and/or in-shift hours worked and/or work performed, to the detriment of said employees and to the benefit of Defendant, in violation of the FLSA and WWPCL (*Id.*) For purposes of facilitating settlement only, Defendant has agreed not to dispute that a number of its defenses are similar as to each of the FLSA Collective members.

Finally, fairness and procedural concerns support certifying the FLSA Collective. It would better serve the Parties and the Court to resolve the claims of the FLSA Collective members in one fell swoop rather than litigate twenty-one (21) individual actions. Moreover, judicial economy is served by so proceeding as a collective action. Final Certification of the Collective Class at this time is appropriate under 29 U.S.C. § 216(b).

## II. APPROVAL OF SETTLEMENT IS APPROPRIATE.

### A. The Criteria for Final Approval Have Been Satisfied.

Resolution of collective and class action litigation by settlement is favored by the federal courts. *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). An FLSA settlement requires court approval in order to be valid and enforceable. *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986). Employees can only bargain, waive, or modify their right to recovery if the parties agree to the terms of the settlement and the court approves the settlement as a fair and reasonable resolution of the *bona fide* dispute over FLSA provisions, and the settlement is entered as a stipulated judgment. *Lynn's Food Store, Inc. v. United States Dep't of Labor*, 679 F.2d 1350, 1353 (11th Cir. 1982).

Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the

same due process concerns as Rule 23 actions. *McKenna v. Champion Intern. Corp.*, 747 F.2d 1211, 1213 (8th Cir.1984).

For example, the Notice and Consent Form previously supplied to the putative collective members, as approved by the Court, adequately informed putative collective members of their right to participate in the lawsuit, to exclude themselves from the settlement, as well as the legal implications of each of these actions, including, but not limited to an agreement to "be bound by any ruling, judgment, award, or settlement." (ECF No. 14-1.) By submitting their Consent to Join Forms with this Court, the twenty-one (21) FLSA Collective members gave their consent to Plaintiff to "make decisions on [their] behalf concerning this litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit." (ECF No. 14-1). Accordingly, no further notice is required. *See e.g., Heuberger v. Smith*, 2019 WL 3030312 (N.D. Ind. Jan. 4, 2019).

For these reasons, the standard for approval of an FLSA settlement is lower than for a class action under Rule 23, and courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. 679 F.2d 1350, 1353 n. 8. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Id.* at 1353–54. If the proposed FLSA settlement reflects a reasonable compromise over contested issues, it should be approved. *Id*. at 1354.

1. **The Proposed Settlement Is Fair, Reasonable, and Adequate.**

The Settlement Agreement outlined above is fair and reasonable for the parties. Real disputes exist between the parties as to whether liability exists in this case and, if liability were proven, the extent of the damages.

Further, the settlement provides all participating FLSA Collective members with a substantial benefit in light of the risk of no recovery in this case. (Declaration of David M. Potteiger ("Potteiger Decl."), ¶ 17.) The amounts paid to each individual FLSA Collective member was determined by Plaintiff after a thorough review of Defendant's timekeeping records and earnings statements as well as conducting witness interviews. (*Id.* at ¶¶ 15-16.)

Based upon this information, Plaintiff estimated the amount of "off-the-clock" work performed by the FLSA Collective members each workweek and recalculated each opt-in plaintiff's actual past due overtime wages. (*Id.* at ¶ 16.) Specifically, Plaintiff determined that, on average, the FLSA Collective members had worked, on average, an additional seventeen (17) minutes per workweek which Defendant allegedly did not compensate. (*Id.* at ¶ 15.) Plaintiff then calculated each collective member's unpaid wages by multiplying their highest overtime rate of pay during the three (3) year statutory period by seventeen (17) minutes over the total number of workweeks worked during the statutory three (3) year period (*e.g.,* (($21.00/hr / 60 mins) x 17 mins) x 104 weeks = $618.00). (*Id.* at ¶ 16.) Plaintiff then added liquidated damages in an amount equal to unpaid wages to determine Defendant's total exposure to the FLSA Collective members. (*Id.*)

After further arm's length negotiation, the Parties agreed that there was substantial dispute as to whether the "willfulness" required for a third year could be established and whether the Defendant could establish the requisite "good faith" to avoid liquidated damages. (*Id.* at ¶ 17.) As an agreed resolution, the Parties included a proportionate amount for liquidated damages, and then reduced the total potential recovery by an amount commensurate with continued risk over a full three-year statutory period. (*Id.*) This settlement results in the FLSA Collective members receiving one hundred percent (100%) of past due wages and sixty percent (60%) of their potential liquidated

8

damages. (*Id.*) Therefore, each FLSA Collective member will receive one hundred and sixty (160%) of their past due wages, as calculated by Named Plaintiff. Beyond this, the settlement is structured to maximize payment to participating FLSA Collective members by foregoing involvement of a Claims Administrator and the costs inherently associated with a claims administration process.

        **2.     The Settlement Was Reached Through Extensive Arm's Length Negotiations.**

The Parties have divergent views regarding the Plaintiff's assertions in her Amended Complaint but were able to work towards a compromise in this matter and did so at arm's length. (*Id.* at ¶¶ 14-19.)

        **3.     The Settlement Fund Provides Adequate Relief for the FLSA Collective Members and the Proposed Allocation Method Equitably Divides the Settlement Funds.**

The allocation of the amount of the Net Settlement Fund that each FLSA Collective member will receive is based upon a recalculation of wages allegedly owed to each FLSA Collective member as described above. (*Id.* at ¶¶ 15-16.) This is a substantial recovery and certainly a reasonable outcome considering the number of issues faced.

Named Plaintiff recognized that the prospect of expeditious resolution outweighed the continued time, effort, expense, and risk of litigation for both parties, including the substantial and almost immediate prospect of additional and continued discovery, depositions, document review and production, retention of expert witnesses, and the filing of certification, de-certification, dispositive motions and a potential trial. (*Id.* at ¶ 14.)

Further, the time and investment in continued litigation would be substantial. The parties were preparing to embark on significant additional and continued discovery immediately before settlement that would have required significant investment from all parties and their counsel before

dispositive motions and trial. Even if Named Plaintiff were to prevail at trial, there is still the prospect that Defendant would appeal any number of the issues mentioned and only further delay any recovery for Named Plaintiff and the FLSA Collective members. (*Id.*)

### 4. The Requested Service Payment Is Reasonable.

The Settlement Agreement provides that the Named Plaintiff shall receive a service payment in recognition of her efforts as well as the benefit each FLSA Collective member derived from their individual efforts, particularly her extensive participation in the investigation leading up to the filing of the lawsuit as well as the discovery and settlement process.

"District Courts in this Circuit have routinely awarded incentive fee awards ranging from $5,000 to $25,000." *Chesemore v. All. Holdings, Inc.*, 2014 WL 4415919, at *5 (W.D. Wis. Sept. 5, 2014), *aff'd sub nom. Chesemore v. Fenkell*, 829 F.3d 803 (7th Cir. 2016). In fact, an empirical study of incentive awards found that the average award was $15,992.00. *See* Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L.Rev. 1303, 1308 (2006).

The amount of the award can reflect the extent to which the class has benefitted from the plaintiff's efforts to protect the interests of the class and the amount of time and effort expended. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). In *Benoskie v. Kerry Foods, Inc.*, this Court approved a $5,000.00 service award in recognition that the settlement agreement paid "each member of the collective approximately 150% of the overtime due." Here, Plaintiff achieved an even greater recovery, *i.e.* 160%.

Moreover, for over a year, Plaintiff has been instrumental in assisting Plaintiff's counsel in this case, including: pre-suit investigation (*e.g.,* identifying potential witnesses, documents, and putative collective members); formal discovery (*e.g.,* responding to twelve (12) interrogatories and

twenty-three (23) requests for production of documents; and negotiating and executing the final Settlement Agreement. (Potteiger Decl., ¶ 9.) By contrast, *Benoskie* was settled prior to any formal discovery. *Benoskie v. Kerry Foods, Inc.,* 19-cv-684, ECF No. 14 (November 12, 2019) (Pepper, P.). As a result, the additional time and effort expended by Named Plaintiff is sufficient to warrant a service award of $6,000.00 as opposed to $5,000.00.

Moreover, Plaintiff's service award is comparable vis-à-vis other service awards granted to other lead plaintiffs in cases under the FLSA and WWPCL in this District. *See, e.g.*, *Kelly v. Hudapack Metal Treating, Inc.,* 20-cv-130, ECF No. 37 (June 24, 2021) (Ludwig, B.) ($3,000.00); *Hoaglan v. Heritage Senior Living, LLC*, 19-cv-1361, ECF No. 30 (March 19, 2021) (Adelman, L.) ($5,000.00); *Henderson, et. al. v. Russ Darrow Group, Inc.,* 19-cv-1421, ECF No. 51 (E.D. Wis. March 16, 2021) (Stadtmueller, J.) ($5,000.00); *Merschdorf v. D.C. Industries, Inc., et. al.*, Case No. 19-cv-1037, ECF No. 45 (W.D. Wis. March 4, 2021) (Peterson, J.) ($5,000.00); *Henderson v. Automated Pet Care Products, Inc.*, Case No. 19-cv-1640, ECF No. 41 (E.D. Wis. February 9, 2021) (Adelman, L.) ($5,000.00); *Medina v. Automax Financial, LLC*, Case No. 19-cv-1582, ECF No. 41 (E.D. Wis. January 29, 2021) (Stadtmueller, J.) ($7,500.00); *Schmitt v. Color Craft Graphic Arts, LLC*, 19-cv-1705, ECF No. 40 (E.D. Wis., November 13, 2020) (Griesbach, J.) ($2,500.00); *Bills v. TLC Homes, Inc.*, Case No. 19-cv-148, ECF No. 53 (E.D. Wis. October 8, 2020) (Pepper, J.) ($3,500.00); *Clark v. Brunswick Corp.*, No. 19-cv-141, ECF No. 44 (E.D. Wis., May 22, 2020) ($2,500.00); *Doberstein v. East Wisconsin Savings Bank*, No. 18-cv-1931, ECF No. 35 (E.D. Wis., November 26, 2019) (Griesbach, J.) ($2,500.00); *Paswaters v. Krones, Inc.,* 19-cv-993, ECF No. 61 (E.D. Wis. July 12, 2019) (Stadtmueller, J.) ($7,500.00); *Eckstein v. St. Paul Elder Services, Inc.*, 19-cv-945, ECF No. 38 (E.D. Wis., June 28, 2019) (Griesbach, J.) ($2,500.00); *Slaaen, et al. v. Senior Lifestyle Corporation, et al.*, 18-cv-1562, ECF No. 92 (E.D.

11

Wis. October 3, 2018) (Stadtmueller, J.) ($7,500.00); *Johnson v. National Technologies, Inc.,* No. 18-cv-462, ECF No. 57 (E.D. Wis., July 22, 2019) (Jones J.) ($8,500.00); *John Weninger v. General Mills Operations, LLC*, Case No. 2018-cv-321, ECF No. 93 (E.D. Wis. April 18, 2019) (Stadtmueller, J.) ($5,000.00); and *Tracy Gerlach v. West Revenue Generation Services, et. al.*, Case No. 2018-cv-170, ECF No. 91 (E.D. Wis. January 3, 2019) (Griesbach, J.) ($7,500.00).

### 5. Class Counsel's Requested Attorneys' Fees and Costs

The Settlement Agreement provides that Defendant shall pay Collective Counsel an award of attorneys' fees and costs in the amount of $41,500.00, which is less than, Collective Counsel's actual and reasonable time spent litigating and resolving this matter. (Potteiger Decl., ¶ 23.) Defendant does not oppose this request.

Unlike Rule 23(H) which requires class counsel to petition for approval of their attorneys' fees and costs, the FLSA "speaks of allowing fees 'in addition to any judgment awarded,' treating the merits of an FLSA claim and the attorney fees as distinct." *Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1027 (8th Cir. 2019) (citing 29 U.S.C. § 216(b)). Thus, "[w]hen the parties negotiate the reasonable fee amount separately and without regard to the plaintiff's FLSA claim, the amount the employer pays to the employees' counsel has no bearing on whether the employer has adequately paid its employees in a settlement." *Id*. "[A]ny authority for judicial approval of FLSA settlements in 29 U.S.C. § 216 does not extend to review of settled attorney fees." *Id*. "This reading of the statute is consistent with the rationale of the circuits that require approval for all FLSA settlements because such approval serves the FLSA's underlying purpose of protecting worker's rights." *Id*. (internal citation omitted).

Here, the parties negotiated reimbursement of Collective Counsel's attorneys' fees separate from the FLSA Collective members' recovery, rather than some percentage thereof, as most

12

notably demonstrated by the amount the FLSA Collective recovered through the parties' Settlement Agreement as compared to their potential recovery through continued litigation. Consequently, the parties memorialized a separate amount for attorneys' fees and costs as agreed upon by the parties.

Based upon the foregoing, Named Plaintiff has not separately filed a motion for approval of their fees and costs nor is such a motion required by the terms of the Parties' Settlement Agreement, but if this Court requires such a motion, Plaintiff respectfully requests additional time to file the same with the Court.

Collective Counsel's attorneys' fees and costs were agreed-upon between the parties and negotiated separately from the amounts or compensation paid to the FLSA Collective members via the Net Settlement Fund. (Potteiger Decl., ¶¶ 15-16, 22-23.) Ultimately, the approval of Collective Counsel's fees and costs by this Court will not affect, in any way, the amounts or compensation paid to the class members via the Settlement Fund. (*Id.*)

## **CONCLUSION**

For the above stated reasons, the Parties jointly request that the Court accept the Parties' Joint Stipulation to certify the 29 U.S.C. § 216(b) collective class. Further, because the settlement represents a fair and reasonable resolution of the Parties' disputes and because preliminary approval is the preferred method of administering such a settlement, the Parties respectfully request that the Court grant the Joint Motion for Preliminary Approval.

Dated this 11th day of November, 2021.

By: *s/ David M. Potteiger*
James A. Walcheske, State Bar No. 1065635
Scott S. Luzi, State Bar No. 1067405
David M. Potteiger, SBN 1067009
Walcheske & Luzi, LLC
235 N. Executive Drive, Suite 240
Brookfield, Wisconsin 53005
Telephone: (262) 780-1953
Email: jwalcheske@walcheskeluzi.com
Email: sluzi@walcheskeluzi.com
Email: dpotteiger@walcheskeluzi.com

*Attorneys for Plaintiffs*

By: *s/ Keith E. Kopplin*
Keith E. Kopplin, SBN 1044861
Suzanne M. Watson, SBN 1079803
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Pabst Boiler House
1243 N. 10th Street, Suite 200
Milwaukee, WI 53205
Telephone: (414) 239-6400
Email: keith.kopplin@ogletree.com
Email: suzanne.watson@ogletree.com

*Attorneys for Defendant*

49196101.1